**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Criminal Case No. 3:23-CR-00055-DJH** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **JOHN ANTHONY SCHMIDT** | ) | |

**SENTENCING MEMORANDUM**
*-Electronically Filed-*

The United States of America, by counsel, files its memorandum in support of sentencing in this action currently scheduled for January 4, 2024.  The United States does not plan to put on testimony at the hearing.  For the reasons set forth below, the government respectfully requests this Court sentence the defendant, John Anthony Schmidt, to a sentence of imprisonment at the lowest end of the advisory sentencing guidelines range and order payment of restitution, a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

**I.  Factual Background**

This case involves defendant John Anthony Schmidt's scheme to steal money from two different trusts he oversaw as trustee during approximately half a decade.  Schmidt was an attorney practicing law in Bullitt County, Kentucky, with his own private law firm, The Schmidt Law Office, P.S.C., a/k/a Schmidt and Etherton Law Offices PSC.  (DN 28, Presentence Investigation Report, ¶11.)  He also served as the Master Commissioner of the Bullitt County Circuit Court during the years he engaged at the scheme at hand, having done so from the early 1990s until December of 2019. (*Id.*)  As part of his private practice of law, Schmidt sought appointment and was appointed by the Commonwealth of Kentucky Bullitt County District Court to serve as a

Public Administrator or trustee for various estates and trusts, including the victim trusts in this case, Trust A and Trust B. Schmidt was appointed as the sole trustee for Trust A on or about June 4, 2012, and as the Public Administrator for Trust B on or about January 5, 2015 (roles jointly hereinafter referred to as "trustee"). (*Id*.) Both original beneficiaries of Trust A and Trust B were older individuals when Schmidt was appointed as trustee (in their 70's and 60's, respectively) and relied on Schmidt to manage the trust assets. (*Id*. ¶18.) In his role as trustee for Trust A and Trust B, Schmidt had access to the assets, moneys, and funds of both trusts and held signatory authority on the bank accounts held by both Trusts. Trust A's assets were held at Financial Institution #1. (*Id*. ¶11.) Trust B's assets were held at Financial Institution #2.[1] (*Id*.)

Starting no later than September 2014, Schmidt devised a scheme to defraud and to obtain money from the two Trusts, Trust A and Trust B, by means of false and fraudulent pretenses and representations in which he began to move money from each of the Trusts' bank accounts to bank accounts he controlled. Schmidt's transfers of money from the assets of Trust A and Trust B as part of the scheme to defraud were neither approved nor authorized by the terms of the Trusts, nor were the funds used for Trust purposes. (DN. 26, Plea Agreement.) Instead, Schmidt made the unapproved transfers of money from the Trusts' assets to pay for his own personal expenditures. As part of the scheme, Schmidt misrepresented to the financial institutions that held the Trusts' assets – Financial Institutions #1 and #2 – that he had the authority as trustee to remove and obtain certain money and funds from Trusts A and B held at these financial institutions, when, in truth and in fact, he had no such authority to do so and was removing those monies and funds for his own personal use. (*Id*.)

---

[1] As a result of the discovery of his wrongdoings that led to this case, Schmidt was removed by the Bullitt County District Court as trustee for Trust A in or about September 2019, and as trustee for Trust B in the fall of 2020. (DN 28, Presentence Investigation Report, ¶11.)

As part of the scheme, while serving as trustee for Trusts A and B, Schmidt wrote checks, caused official checks to be issued, obtained cashier's checks, and caused withdrawals of funds from Trust A and Trust B held at Financial Institutions #1 and #2, respectively, in order to obtain money from the Trusts to which he was not entitled. (DN 28, Presentence Investigation Report, ¶12.)  Schmidt would then deposit the money he obtained from Trust A or Trust B into a bank account he personally held or a bank account held by his law firm.  (*Id*.)  He then used the funds obtained from the Trusts for purposes unrelated to Trust A or Trust B.  (*Id*.)

Schmidt also obtained funds from the Trusts in order to pay debts he incurred to individuals he had represented or purported to represent in the course of his legal practice.  (DN 28, Presentence Investigation Report, ¶13.)   In these instances, Schmidt would obtain the funds from the Trusts' accounts at Financial Institutions #1 and #2 through his position as trustee by transferring funds or causing the issuance of checks on the Trusts' accounts. (*Id*.) Schmidt often signed checks he caused to be issued from the Trusts' bank accounts for his own benefit rather than for Trust purposes as "John Schmidt, trustee" when he issued or endorsed the checks. (*Id*.) In at least two instances Schmidt obtained funds from Trust B in order to replace missing funds from the Bullitt County Master Commissioner bank account.  (DN 28, Presentence Investigation Report, ¶14.)   In these instances, Schmidt obtained the funds from Trust B by way of a temporary check drawn on Trust B's bank account with Financial Institution #2 that he signed as trustee for Trust B.  Schmidt then deposited the temporary check into the bank account of his private law firm and subsequently wrote a check from his law firm account (for the same or substantially similar amount to that which he withdrew from Trust B) to "John Schmidt, Master Commissioner" and deposited that check into the Bullitt County Master Commissioner account.  (*Id*.)

By means of his fraudulent scheme, between 2014 and 2019, Schmidt obtained money to which he was not entitled from Trust A and Trust B, maintained at Financial Institutions 1 and 2, respectively, totaling $435,010.  (DN 28, Presentence Investigation Report, ¶17.)  After it was discovered that he had been stealing from Trust A, Schmidt made a payment of $127,000 to Trust A in the fall of 2020.  Both Trusts have subsequently been engaged in civil litigation with Schmidt to recover the stolen funds and other damages and, because of that litigation, Schmidt has agreed to make and has made some payments to Trust B.  Financial Institution #2 and an insurance provider have also made payments to Trust B.

## II.  Guidelines Calculation

The United States agrees with the U.S. Probation Office's calculations contained within the Presentence Investigation Report.  (DN 28, Presentence Investigation Report, ¶¶34, 38.)  The resulting offense level is 22, and the defendant's criminal history category is I.  This results in an advisory guideline sentence of 41 to 51 months' imprisonment. *Id*. at ¶55.

Specifically addressing substantial financial hardship, pursuant to USSG §2B1.1(b)(2)(A)(iii), Schmidt caused substantial harm to both trusts.  Trust B was almost entirely depleted when Schmidt stopped pilfering from it (likely because there was little left to take), with under $1,300 remaining in the Trust.  Trust A, the beneficiary of which was an elderly widow at the time of Schmidt's scheme, was divided into two parts – an investment account and a checking account from which the elderly beneficiary could draw funds from which to live.  Only the Trustee—Schmidt—had access to the investment account, not the beneficiary.  Trust A was the widow's only source of income, and the entirety of her family's wealth.  When Schmidt's scheme was discovered and the elderly beneficiary was notified by the bank of the depletion from the Trust's assets, there were still funds remaining–close to $400,000–in the investment account;

4

however, these were not funds that the beneficiary herself could access without a trustee and her living account was largely drained. According to the attorney for Trust A and family of the beneficiary (who has since passed away), the beneficiary was overwhelmed with anxiety about her finances because of the loss of funds stolen by Schmidt and her inability to access them.

Through his scheme Schmidt stole a significant portion of the elderly widow's money – money she was in no position to earn again in her lifetime, nor have any knowledge or belief that she might recover any portion of it from Schmidt at some time. The balance of Trust A was approximately $560,000 in November 2012, and during his scheme Schmidt stole $194,500 from the trust. A loss of over 30 percent is not minimal or trivial; instead, in this case it caused substantial harm to the beneficiary. *United States v. Skouteris*, 51 F.4th 658, 672 (6th Cir. 2022) (holding substantial financial hardship "focuses on the 'extent of the harm' to a particular victim and requires a showing that the loss was 'more than minimal or trivial' as gauged by the victim's specific financial circumstances"); *United States v. Howder*, 748 F. App'x 637, 644 (6th Cir. 2018) (holding the court "may make reasonable inferences about the victims' financial circumstances and about their level of financial harm, so long as those inferences find some support in the record"). Additionally, the present beneficiary of Trust A, the son of the previous beneficiary, has had to postpone his retirement due to the depletion of the Trust assets caused by Schmidt's scheme as the principal of the trust was intended to financially support his retirement. *See* U.S.S.G. § 2B1.1 cmt. n. 4(F) (in "determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim [] becoming insolvent[; ] suffering substantial loss of a retirement, education, or other savings or investment fund[; and/or] making substantial changes to his or her employment, such as postponing his or her retirement plans.") The United States anticipates that it will have additional

information from this victim beneficiary to supply to the Court prior to sentencing, and that this victim will also wish to address the Court at sentencing regarding the impact this crime has had on him and his family.

### III. The 18 U.S.C. § 3553(a) Factors Support a Sentence of Imprisonment Within the Advisory Sentencing Guidelines Range

The Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Title 18, United States Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)   to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and
>
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for--

> (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
> . . .

(5)   any pertinent policy statement--
> . . .

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

The offense in this case is a serious one. The scope and magnitude of Schmidt's crime are a betrayal of the public trust and the power granted to those who serve as attorneys, as trustees and Public Administrators, and the additional trust given to those serving as public officials. Schmidt

spent years stealing from Trust A and Trust B, and thereby their beneficiaries, taking steps to cover up his scheme and the long-term implications it would have for the Trusts' and their beneficiaries' financial wellbeing, without regard for the fact that doing so violated the faith placed in him as a trustee, tasked explicitly with a fiduciary duty of loyalty to the Trusts above all.  Moreover, Schmidt's conduct in this case was not a one-time mistake; rather, it extended over many years and involved a deceitful scheme to steal from Trust A and Trust B for various personal purposes, including to pay off *additional monies missing* from Schmidt's legal clients and the Bullitt County Master Commissioner bank account that repeatedly came up short of funds during Schmidt's tenure.  Quite significantly, Schmidt's scheme caused significant impact and harm to the individual victims in this case, the beneficiaries of the trusts, who are directly impacted by the loss of their money, by the substantial stress and worry, by the delay of retirement, by the necessary litigation that ensured, and by the loss of trust in the system that was supposed to protect them.

A sentence of imprisonment at the lowest end of the advisory guidelines range is necessary in this case to recognize the severity of the crime and the characteristics of the defendant that gave rise to its commission over many years.  A sentence of this nature would further recognize the significant impact Schmidt's scheme had on the victims in this case as well as the impact that financial crimes of this sort have on the community at large.  Such as sentence would serve as a deterrent to others who would commit such crimes, especially to those who are placed in positions of trust as Public Administrators and trustees.

## IV. Restitution

Restitution is mandatory in this case under 18 U.S.C. § 3663A.  (DN 28, Presentence Investigation Report, ¶67.)  The loss amount in this case is $435,010; however, the restitution amount owed by Schmidt at this time will be less due to amounts he has already repaid prior the

sentencing.  The government is awaiting additional information from the defendant regarding payments made by Schmidt and other parties and anticipates that it will tender an agreed order of restitution, or a supplemental filing further addressing restitution, prior to sentencing.

### V. Conclusion

For the reasons set forth herein, the United States respectfully requests the Court to impose a sentence of imprisonment at the lowest end of the advisory sentencing guideline range and enter an order of restitution in this case.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney


*s/ Stephanie M. Zimdahl*
Stephanie M. Zimdahl
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-6217 (Tel.)
(502) 582-5097 (Fax)


CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Rob Eggert and Patrick J. Renn, counsel for John Anthony Schmidt

*s/ Stephanie Zimdahl*
Stephanie Zimdahl
Assistant United States Attorney